565 P.2d 882

**MUSTANG EQUIPMENT, INC., a corporation, Appellant,**

v.

**Ronald G. WELCH, Appellee.**

**Ronald G. WELCH, Appellant and Cross Appellee,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Appellee and Cross Appellant.**

**Nos. 1 CA–CIV 3051 and 1 CA–CIV 3217.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 28, 1976.

Review Granted Feb. 16, 1977.

Renaud, Cook, Miller & Cordova, P. A. by John H. Seidel, Phoenix, for appellant Mustang Equipment, Inc.

John R. Elliott, Phoenix, for appellee, also appellant and cross-appellee Welch.

Fennemore, Craig, von Ammon & Udall by Roger C. Mitten, Ruth V. McGregor, Phoenix, for appellee/cross-appellant The Mountain States Tel. and Tel. Co.

NELSON, Judge.

These consolidated appeals are before us as a result of the trial court's action in separate motions for relief of judgment filed by The Mountain States Telephone and Telegraph Company (Mountain States) and Mustang Equipment Company (Mustang), defendants in the trial court.

The cause originated as a suit for personal injuries suffered by Ronald G. Welch (Welch) when the car he was driving was struck from the rear by a truck owned by Mountain States and driven by Jose G. Lopez (Lopez). Although Lopez was a defendant in the trial court, the jury found in his favor and he was not a party to the post judgment proceedings, nor is he a party to this appeal. The jury returned a verdict in favor of Welch and against both Mountain States and Mustang in the amount of $20,-000. After the time for appeal had run, Rule 73(b), Rules of Civil Procedure, 16 A.R.S., Welch's counsel made a demand upon counsel for Mustang for payment of the full amount of the judgment.

Since it is apparently the informal rule, at least insofar as this record reflects, and contrary to the decisional law of this state (*see e. g.*, *State Farm Mutual Insurance Company v. Factory Mutual Insurance Company*, 22 Ariz.App. 199, 526 P.2d 406 (1974) and cases cited therein), that there *is*

contribution between solvent joint tort-feasors and/or their insurance carriers, counsel for Mustang inquired as to why his client should pay more than his fair share. He thereafter learned, for the first time, that Welch and Mountain States had executed a pretrial agreement which provided that Welch, in exchange for information that there was, in fact, another potential defendant, Mustang, who might be solely responsible for the brake failure on Mountain States' truck, covenanted not to execute against Mountain States in the event a judgment was entered against both Mountain States and Mustang. Neither the trial court nor counsel for Mustang was informed of the existence of the agreement.

Mustang filed a motion for relief of judgment, pursuant to Rule 60(c), *supra*. Execution was temporarily restrained pending the decision on the motion. Mustang's motion was subsequently denied and counsel thereafter perfected this appeal and was successful in a contested effort to file a supersedeas bond, pursuant to Rule 73(k), Rules of Civil Procedure, *supra*.

As Welch's counsel had predicted in his opposition to Mustang's efforts to supersede the judgment, *supra*, Mountain States successfully opposed Welch's effort to execute against it in yet another Rule 60(c) proceeding. The trial court, although refusing to grant Mountain States final relief from the judgment, as prayed for in its Rule 60(c) motion, did permanently enjoin the execution of the judgment against Mountain States pending appeal. Welch perfected an appeal from the stay of execution and Mountain States filed a cross-appeal from the trial court's denial of its motion for relief from the judgment.

It is clear from the records before the court, the briefs of counsel, and the oral argument heard in these appeals, that this cause was fairly, vigorously and adversarily tried before the jury and trial court in Maricopa County. Mountain States and Mustang opposed Welch's damage evidence; both denied negligence; and Mountain States actively pursued its cross-claim against Mustang for damage to its vehicle caused by Mustang's alleged negligence. There is neither allegation of, nor is there any evidence which would support findings of fraud, collusion, unethical conduct or any conscious effort or desire to mislead either counsel, the jury, or the court. Nevertheless, the failure, however unintentional, to communicate the pre-trial covenant to execute in a particular manner after judgment to both court and counsel prior to trial, renders the agreement voidable and requires this Court to set aside the trial court's post judgment orders and remand this cause for further proceedings.

## THE COVENANT

The courts of this jurisdiction unlike some in other jurisdictions (*see*: Annot., 65 A.L.R.3d 602 (1975)), have recognized as valid pre-trial agreements between plaintiffs and some, but not all defendants, as to how the liability of the agreeing defendants will be handled after the lawsuit has been tried and judgment entered. *City of Tucson v. Gallagher*, 108 Ariz. 140, 493 P.2d 1197, 65 A.L.R.3d 597 (1972); *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969); *Hemet Dodge v. Gryder*, 23 Ariz.App. 523, 534 P.2d 454 (1975); *City of Glendale v. Bradshaw*, 16 Ariz.App. 348, 493 P.2d 515 (1972), supplemented on rehearing 16 Ariz. App. 483, 494 P.2d 383 (1972) on review, affirmed in part and reversed in part, 108 Ariz. 582, 503 P.2d 803 (1972). The Supreme Court reversed the Court of Appeals in *Bradshaw, supra*, only on the issue of loss of consortium. We thus have both the Supreme Court in *Gallagher*, and the Court of Appeals in *Bradshaw*, within two weeks of each other, approving these types of agreements and citing the identical precedent, *Damron v. Sledge, supra*.

The agreement in this case is short and

uncomplicated.[1] Counsel urge that since the plaintiff Welch is guaranteed no money by the agreement, the agreement here is distinguishable from those referred to in *Gallagher, Damron, Bradshaw* and *Hemet Dodge, supra.* Welch, in fact, urges that there was no binding agreement at all. Although we perceive a great number of potential variations in pretrial agreements such as these (*see* Annot., 65 A.L.R.3d 602, supra), in this instance the difference is one of degree and not substance. The agreement here is strikingly similar to one recently approved by this Court in *Hemet Dodge v. Gryder, supra.* While no specific amount of money is mentioned, and no commitment for a minimum recovery in case of a defense verdict for all defendants is provided, the remaining elements of the agreement are there, either directly or inferen-

1.

FENNEMORE, CRAIG, von AMMON & UDALL
ATTORNEYS AT LAW
1700 FIRST NATIONAL BANK PLAZA
100 WEST WASHINGTON STREET
PHOENIX, ARIZONA 85003
TELEPHONE 602 258-7311

JAN 30 1973

January 29, 1973

John R. Elliott, Esquire
3550 N. Central, Suite 1700
Phoenix, Arizona 85012

Re: Welch v. Lopez and Mountain States

Dear John:

This is to confirm our luncheon conference of Friday the 26th with Rex Anderberg of Mountain States. I enclose a copy of a letter dated February 28, 1972 from our expert, Ron Balfour and ask that you do not give this letter or refer to its contents to anyone on behalf of Mustang Equipment Company. Further, this confirms our agreement that you will file an Amended Complaint including Mustang as a defendant; that we will proceed to attempt to prove our case of brake failure as a result of Mustang's negligence and should you obtain a verdict against both Mountain States and Mustang that you will execute solely against Mustang for that verdict. It is our intention to crossclaim against Mustang for the property damage to Mountain States' vehicle.

Yours very truly,

FENNEMORE, CRAIG, von AMMON & UDALL

Roger C. Mitten

*Agreed*
*Sept. 30/74*
*John R Elliott*

Mr. R. E. Anderberg

tially. Since the likelihood of a defense verdict in a severe rear-end collision case, such as we have here, is negligible, the absence of a clause covering that condition is not significant. If a judgment was entered against Mountain States only, clearly Mountain States would be responsible for the full judgment. If judgments were entered against both Mountain States and Mustang, Welch would execute entirely against Mustang.

More importantly, the impact upon the unaware defendant is identical. From the beginning, counsel labored under the belief that his client, Mustang, was a co-defendant in all respects. While he was aware, to be sure, that Mountain States was attempting, by virtue of the cross-claim, to show that Mustang's negligence was the sole cause of the collision, he was unaware of any other motivation by Mountain States to insure at least a verdict against both Mountain States and Mustang. While he was also aware of the decisional law on liability of joint tortfeasors, *supra*, he was unaware of any reason which would take this case out of the normal custom of contribution, accepted for purposes of this record, when trying to settle a case before trial, or after a verdict is rendered against both and no appeal filed. While he knew of all but one of the reasons Mountain States was not interested in contributing to an offer to settle, *e. g.*, workmen's compensation already paid to the truck driver; it was a self-insurer; expense to repair the truck; and attorney fees, it is impossible to say that settlement negotiations between Mustang and Welch might not have been different if counsel had known, in addition to the reasons set forth above, that Mountain States had no additional exposure so long as a verdict was also obtained against Mustang.

■ We believe *Gallagher, Bradshaw, Hemet Dodge* and *Damron, supra,* require these agreements to be fully disclosed prior to trial to be valid. Although we have inferred that the saving grace of these agreements in this jurisdiction was their disclosure, *City of Glendale v. Bradshaw,* *supra*, 16 Ariz.App. at 355, 493 P.2d at 522, we now hold that the failure to disclose to all counsel and the trial court prior to trial the existence of these pre-trial covenants not to execute, or to execute in a certain manner, depending upon how the verdicts and judgments are rendered, invalidates the agreements.

### THE REMEDY

■ Having found the agreement in question invalid and unenforceable because of the failure to disclose, what remedy is now available to the parties in this Court? In *Trampe v. Wisconsin Telephone Co.*, 214 Wis. 210, 252 N.W. 675 (1934), cited in *City of Glendale v. Bradshaw, supra*, the Wisconsin court condemned the agreement totally and ordered the complaint dismissed completely. While we believe such a severe remedy might be appropriate where there is clear evidence of fraud, collusion, and active deception of either the nonagreeing defendants or the court, such a remedy would be unduly harsh in a case such as we have here.

In Nevada, a jurisdiction which also totally condemns such agreements,, whether disclosed or not, the remedy was to put the parties back in their original position by granting a complete new trial, reinstating the agreeing defendants which had been previously dismissed. *Lum v. Stinnett*, 87 Nev. 402, 488 P.2d 347 (1971). Interestingly, one of the cited authorities for holding such agreements totally invalid was Op. No. 70–18, Arizona State Bar Committee on Rules of Professional Conduct (1970), *Lum v. Stinnett, supra*, 488 P.2d at 351–52. *See also: City of Glendale v. Bradshaw, supra.*

In another Nevada decision prior to *Lum v. Stinnett, supra*, the Nevada Supreme Court affirmed a trial court's decision voiding such an agreement and directing each party to pay their fair share of the judgment. *Ponderosa Timber & Clearing Co. v. Emrich*, 86 Nev. 625, 472 P.2d 358 (1970). The three man majority in *Emrich, supra*, reasoned that the trial was fair and untainted by the existence of the agreement, and the evidence amply supported the ver-

dict. Thus a new trial would not likely produce a significantly different result. Two members of the Nevada court in *Emrich* dissented, indicating that the trial was indeed tainted by the agreement.

We are satisfied that this trial was fully and fairly developed in the manner contemplated by our adversary system. Since neither the plaintiff; Welch, nor the non-agreeing defendant, Mustang, sought an appeal from the judgment initially, and thus did not favor us with a trial transcript, we presume they were satisfied with the result. Mountain States' position, both in the post-judgment proceedings in the trial court and before this tribunal, has been clear and consistent—the case was vigorously, fairly and fully tried.

If we had the authority, (*see McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968)), we might well engraft into the Arizona decisions a narrow exception regarding non-contribution of joint tortfeasors, see *State Farm Mutual Insurance Company v. Factory Mutual Insurance Company, supra*, along the lines set forth above regarding the informal activities of insurance carriers and solvent defendants as reflected in the record before the court, and direct Mountain States to pay half the judgment and Mustang the other half. Absent that authority, we have no alternative but to reverse the post judgment proceedings, as well as the judgment itself, and remand for a new trial. We abhor the prospect of ordering yet another trial in an already overcrowded court when the prospects of a substantially different result are minimal, but without the authority to direct contribution, no other alternative is available.

We reverse the orders heretofore entered by the trial court in the post-judgment proceedings in this cause as well as the judgment entered on the jury verdict. The case is remanded to the trial court for a new trial without reference to the agreement heretofore voided.

DONOFRIO, P. J., and OGG, J., concur.